IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| JAY MICHAEL JONES, § | CASE NO. 04-41909 |
| Debtor § | Chapter 7 |
| § | |
| § | |
| JOSEPH M. HILL, TRUSTEE, § | Adversary No. 05-3032 |
| Plaintiff § | |
| § | |
| v. § | |
| § | |
| JAY MICHAEL JONES, § | |
| Defendant § | |

**MEMORANDUM OPINION ON OBJECTION TO DEBTOR'S DISCHARGE
FILED BY JOSEPH M. HILL, CHAPTER 7 TRUSTEE**

Joseph M. Hill (Trustee), in his capacity as the Chapter 7 Trustee, filed this adversary proceeding against the Debtor, Jay M. Jones (Jones). The Trustee objects to Jones's discharge claiming that Jones has violated 11 U.S.C § 727 (a)(2)(A) by fraudulently conveying his assets in the hope of hiding them from creditors. In addition, the Trustee claims that Jones has violated 11 U.S.C. § 727 (a)(3) because Jones has failed to keep and produce adequate records such that the Trustee and Jones's creditors can ascertain Jones's financial condition. This Court finds that Jones's discharge should be denied on both grounds. This Memorandum Opinion explains why.

I. FINDINGS OF FACT

The facts, as stipulated to or admitted by counsel of record, as contained in exhibits, or as adduced from the testimony of the witnesses, in chronological order, are as follows:

1. On March 24, 2004, Jones sold his homestead, which was located at 9602 Carraway McKinney Lane in Plantersville, Texas. He received $77,321.50 from the transaction. At that time, Jones knew this money was exempt for 180 days.

2. On March 25, 2004, Jones deposited $66,095.25—over $11,000 less than his settlement from the sale of his homestead—into his personal savings account. That same day, he withdrew $50,000 from the account.

3. On March 30, 2004, five days after the initial deposit, Jones made two more withdrawals from the same account for $3,000 each.

4. On April 1, 2004, Jones made two more withdrawals totaling $9,800 from the same account.

5. In July 2004, Jones gave his fiancée, Marian Schoppe (Schoppe), $18,000 in cash to make a down payment on a new truck. Jones then paid the lender, Banco Popular Bank, an additional $2,000 for each of the first two months after Schoppe's initial payment. Jones's monthly payments on the truck are $240. The title is in Schoppe's name, but Jones uses the truck for his own personal and business needs.

6. On August 23, 2004, Jones voluntarily filed his Chapter 7 petition in the United States Bankruptcy Court in the Southern District of Texas. However, Jones signed and dated his Petition, Schedules, and Statement of Financial Affairs on August 20, 2004.

7. During the period between the sale of Jones's homestead on March 24, 2004 and the filing of his petition on August 23, 2004, Jones estimates that he spent over $57,000 of the proceeds from the sale on a number of items rather than on a new homestead. These estimated expenses include:

| | |
|---|---:|
| Rent/Utilities | $6,000.00 |
| Gas, Toll, Auto Repairs | 2,440.00 |
| Health/Medical | 2,665.00 |
| Child Support (March – September) | 3,800.00 |
| Child Health Care Insurance | 250.00 |
| Divorce Attorney Fees | 2,000.00 |
| Bankruptcy Attorney Fees | 1,000.00 |
| Storage | 2,400.00 |
| Trailer, Tractor, Jet Ski, Old Truck Notes | 5,016.00 |
| New Ford F250 Pickup Truck | 22,000.00 |
| Auto Insurance | 810.00 |
| Food, Clothing, Recreation, Wedding | 4,100.00 |
| Veterinarian | 540.00 |
| Cell Phone | 3,000.00 |
| Moving Expenses | 1,000.00 |
| Total | 57,021.00 |

       However, Jones's Schedule J discloses different figures from these estimates. For example, Jones disclosed on Schedule J that he pays only $250 per month for rent and utilities. The Court cannot reconcile Jones's $6,000 estimate with the $250 monthly figure on Schedule J, which is only $1,250 over five months.[1] Additionally, Jones disclosed transportation expenses of $240 per month (not including car payments) on Schedule J. However, this figure multiplied over the five month period totals $1,200, which is not quite one half of the $2,440 figure which Jones estimated at trial.

8. On August 27, 2004, Jones executed three separate cashier's checks totaling $13,911.10 to Dan Taber, in his capacity as a trustee, to purchase real estate in Fayette County. The checks contained the names of both Jones and his fiancée at that time, Schoppe, as the purchasers. Jones testified that on that same day, Schoppe purchased the real estate using Jones's money. Only Schoppe signed the Settlement Statement, the Deed of Trust, the Promissory Notes, and Warranty of Deed for that real estate. Jones's name does not appear on any of the paperwork involved in the purchase, nor did he sign any of the above mentioned papers. These cashier's check receipts and the papers from the sale of the real estate are the only records that Jones produced for the Trustee.

9. On October 9, 2004, Jones married Schoppe.

## II.   CONCLUSIONS OF LAW

### A.   Jurisdiction and Venue

       This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and § 1334(a). This suit is a core proceeding under 28 U.S.C. § 157(b)(2)(J) and is proper pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

       Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. § 1409(a).

### B.   Jones Should Be Denied a Discharge For Violating 11 U.S.C. § 727(a)(2)(A).

---

[1] While Jones also testified that he gave Schoppe an additional $500 per month to pay a portion of her rent and utilities, this figure over the five month period prior to Jones's bankruptcy filing would still total only $3,750.00 ($2,500.00 for Schoppe's rent and utilities + $1,250 for Jones's rent and utilities). Thus, even assuming that Jones's testimony was accurate—and the Court is skeptical that it was—there is still a discrepancy of $2,250 with respect to Jones's rental and utility payments. All in all, because Jones has produced no records, bills, receipts, or other proof of such expenses, the Court is not convinced that Jones's estimates are accurate.

3

In a Chapter 7 case,

**(a)** The court shall grant the debtor a discharge, unless—
   **(1)** the debtor is not an individual;
   **(2)** the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
      **(A)** property of the debtor, within one year before the date of the filing of the petition;

11 U.S.C. § 727 (2005). Do Jones's actions amount to a violation of this statute? Application of the relevant law to the facts indicate that they do.

On March 24, 2004, Jones sold his home and came away from the closing with cash of $77,321.50. Texas law allows a temporary exemption of proceeds from the sale of a homestead from creditors' claims so that money can be reinvested in another homestead; therefore, Jones's money was exempt for six months from the time of sale. Tex. Prop. Code Ann. § 41.001 (c) (Vernon 2005). When Jones filed for bankruptcy on August 23, 2004, there was slightly over a month left before the money was no longer exempt from claims. The purpose of the exemption on home sale proceeds is "*not to protect the proceeds, in and of themselves*," but rather, "*solely to allow the claimant to invest the proceeds in another homestead[.]*" *In re Zibman*, 268 F.3d 298, 305 (5th Cir. 2001) (emphasis in original). The legislative intent behind this exemption is to prevent homelessness among Texas residents. *Id.* at 304-05 (quoting *In re England*, 975 F.2d 1168, 1174 (5th Cir. 1992)). The exemption of the money from creditors' claims gave Jones the right to hold the money for purchase of another homestead, but not to make purchases of other assets or items or otherwise dispose of the money in a way that would prejudice the interests of his creditors in his assets.

In July 2004, the month before filing for bankruptcy, Jones transferred $18,000 to Schoppe to use as a down payment on a Ford F250 pickup truck. After that, he made two payments of $2,000 each in her name and then continued with monthly payments of $240. The Fifth Circuit has stated that during "[the] six month window, if the debtor purchases a new homestead[,] any remaining proceeds from the sale of the first homestead are instantly rendered non-exempt." *In re Davis*, 170 F.3d 475, 483 n.10 (5th Cir. 1999) (citing *England*, 975 F.2d at 1174). Hence, assets (other than a homestead) which are purchased with the remaining proceeds, even within the six-month exemption period, "are not covered by section 41.001 [of the property

4

code] and are therefore not exempt." *Id.* at 1175; *see also Zibman*, 268 F.3d at 305. Because the Ford F250 was purchased with some of the remaining proceeds, this asset is not exempt; therefore, it is subject to claims of Jones's creditors. The issue thus becomes whether Jones's transfer of these proceeds to Schoppe, or on her behalf, so that the truck could be purchased and titled in her name constitutes a violation of 11 U.S.C. § 727 (a)(2)(A).

The Trustee must satisfy four elements to establish that Jones has violated 11 U.S.C. § 727 (a)(2)(A). They are: (1) a transfer of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; and (4) with intent to hinder, delay, or defraud a creditor or officer of the estate." *In re Chastant*, 873 F.2d 89, 90 (5th Cir. 1989). Here, there was a clear transfer of property (i.e. cash of $18,000), the property belonged to Jones, and the transfer occurred the month before filing.

In a case of this nature,

> [a]ctual intent ... may be proven by circumstantial evidence ... Factors evincing actual intent to defraud under section 727(a)(2)(A) [include] (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*Id.* at 90-91 (citations and internal quotations omitted).

In the lawsuit at bar, Jones did not attest to receiving any consideration in return for the payments that he made to Schoppe or on her behalf. He simply gave her $18,000 in cash; the vehicle was purchased, and title was put solely in her name; and then, he made payments on her behalf thereafter to the lienholder on the truck; all the while, he alone was using the truck. In addition to these circumstances, Jones is closely related to Schoppe; and it certainly should have been clear to Jones in July 2004 that he was in no financial shape to give away funds totalling in excess of $22,000. These circumstances are sufficient evidence to imply that Jones was trying to hide the purchase of a truck he intended to use from his creditors and the Trustee. In addition, at several points in his testimony, Jones directly admitted that his reasons for purchasing the truck through Schoppe were (1) his own credit was not very good; and (2) he did not want creditors to be able to reach to his assets. Through funneling money to Schoppe so that the purchase of the

truck could be made in her name, Jones committed a fraudulent transfer and, therefore, should be denied discharge pursuant to 11 U.S.C. § 727 (a)(2)(A).

### C. Jones's Failure to Keep and Produce Adequate Records Also Bars His Discharge Pursuant to 11 U.S.C. § 727 (a)(3).

Jones's violation of 11 U.S.C. § 727 (a)(2)(A) is not the only basis for denying him a discharge. Section 727(a)(3) of the Bankruptcy Code also provides for the denial of a debtor's discharge where the debtor fails to

> keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure was justified under *all* circumstances of the case.

11 U.S.C. § 727(a)(3) (emphasis added). To establish such a case against Jones, the Trustee bears the initial burden of proving that: (1) Jones failed to keep and preserve his financial records, such as receipts; and (2) such failure prevented the Trustee from ascertaining Jones's financial condition. *In re Dennis*, 330 F.3d 696, 703 (5th Cir. 2003).

Unlike other subsections of 11 U.S.C. § 727, subsection (a)(3) does not require the Trustee to demonstrate any fraudulent intent by Jones to deceive his creditors or the Chapter 7 estate. *See Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 901 (7th Cir. 2002) (citing *In re Juzwiak*, 89 F.3d 424, 430 (7th Cir. 1996); *In re Scott*, 172 F.3d 959, 969 (7th Cir. 1999)). Jones's mere negligence in failing to keep and produce records will suffice to bar his discharge. *In re Powell*, 112 B.R. 184, 190 (Bankr. S.D. Tex. 1989) (citing *Bartolotta v. Lutz*, 485 F.2d 227 (5th Cir. 1973)). The purpose of 727(a)(3) is to force the Debtor to produce dependable records such that the Chapter 7 Trustee, the creditors, and the Court may rely on these records in tracing the Debtor's financial history and condition. *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3rd Cir. 1992) (citing 4 COLLIERS ON BANKRUPTCY ¶ 727.-03[1] (15th ed. 1979)). Subsection (a)(3) also tests the completeness of the Debtor's disclosures before granting him a discharge. *Meridian Bank*, 958 F.2d at 1230. Accordingly, a debtor maximizes his chances of avoiding a denial of discharge under 11 U.S.C. § 727(a)(3) by producing sufficient records such that the creditors and trustee do not have to speculate as to the debtor's financial condition. *See Juzwiak*, 89 F.3d at 428. Once the Trustee satisfies his initial burden, Jones must establish that his inadequacy of records produced was justified under all the circumstances. *Id.* The Court has

"wide discretion" in determining whether the files produced are inadequate and whether such inadequacy was justified. *Id.* (citing *In re Goff*, 495 F.2d 199, 200 (5th Cir. 1974)).

In *Juzwiak*, the debtor operated a trucking business whereby he purchased grain from suppliers, hauled the grain in his trucks, and re-sold this grain to buyers. *Id.* at 425. When the debtor filed for bankruptcy, he produced his checking account ledgers, canceled checks, deposit slips, bank statements, and a tax return. *Id.* at 426. However, none of these records gave a detailed account of the source of debtor's income or any substantiation of the debtor's expenses. *Id.* Rather, the figures only represented the amounts deposited and withdrawn. *Id.* In denying the debtor's discharge, the court noted that such records forced the creditors to "speculate as to what happened to the grain [the creditors] sold to [the debtor]." *Id.* at 428. The court held that this was unacceptable under § 727(a)(3), and, therefore, denied the debtor's discharge. *Id.*

Similarly, a debtor who produces grossly inadequate records such that the Chapter 7 trustee is unable to determine the debtor's financial condition is not entitled to a discharge. *Union Planters*, 283 F.3d at 901. In *Union Planters*, the debtors borrowed a large sum of money from various lenders to fund four major ventures. *Id.* at 898. When these ventures failed to produce adequate financial gains, the debtors filed their Chapter 7 petitions. *Id.* However, the debtors did not keep records of their financial transactions and produced for the bankruptcy court only the own personal bank statements and balance sheets from one of the ventures. *Id.* In denying the debtors' discharge, the *Union Planters* court held that "a stack of cancelled checks and deposit account statements" were insufficient to prevent a denial of the debtors' discharge under § 727(a)(3). *Id.* at 900. The court further noted that while the balance sheets from one of the ventures were helpful in piecing together the debtors' financial status, the debtors had failed to produce enough records to present the "entire picture." *Id.*

As with the debtor in *Union Planters*, the Court finds Jones's records to be grossly inadequate. Jones has produced nothing more than bank statements and cashier's check receipts. The bank statements merely list the dates and amounts of deposits into and withdrawals from Jones's account. In addition, the cashier's check receipts only account for $13,911.10 of the $20,000.00 cash on hand as of the petition date, which Jones disclosed in his Schedules. These receipts do not assist the Trustee in his determination of how much or where Jones spent the other proceeds from the sale of his homestead. While Jones's testimony at trial gave some detail as to his other expenses, he admitted that the figures represented were mere estimates, and the

7

Court finds these estimates to be suspect given the irreconcilable numbers set forth in the Schedules. Furthermore, Jones did not produce any receipts, bills, or other written or third-party substantiation of these expenses. The Trustee, Jones's creditors, and the Court are therefore left to speculate as to where Jones spent the proceeds from the sale of his homestead and whether Jones presently holds more cash or other assets than he is reporting. The inadequacy of Jones's records is unacceptable, as is the lack of substantiation regarding many of his expenses. Accordingly, this Court finds Jones to be in violation of 11 U.S.C. § 727(a)(3).[2]

Because of this inadequacy, the Court will deny Jones's discharge unless Jones meets his burden of proving that such inadequacy was justified under all the circumstances. *Dennis*, 330 F.3d at 703. Some factors that the Court may consider in determining whether Jones's failure to produce records was justified include: (1) his education; (2) his sophistication and business experience; and (3) any special circumstances that may exist. *In re Sigust*, 255 B.R. 822, 827 (Bankr. W.D. La. 2000) (quoting *In re Pulos*, 168 B.R. 682, 692 (Bankr. D. Minn. 1994)). The debtor in *Sigust* was formally educated with an MBA degree and had many years of experience in national security and highly technical fields. *Id.* at 828. The bankruptcy court held that, as a well-educated, sophisticated person, his failure to produce adequate records was not justified. *Id.* For different reasons, the court in *Juzwiak* found that the debtor was not justified in his inadequate production of financial records. 89 F.3d at 428. The debtor in *Juzwiak* ran his own small trucking operation consisting of three trucks and two other drivers. *Id.* at 425. The debtor also maintained both his personal and his business finances from the same checking account. *Id.* The court held that the debtor's inadequate production was not justified because the debtor was engaged in large-scale transactions with large sums of money. *Id.* at 428. The court used Juzwiak's business acumen, rather than his formal education, as the measure of whether his failure was justified. *Id.*

While this Court notes that Jones is not a highly educated individual, and further notes that Jones's business of laser jet printer maintenance and lawn-mowing is not highly sophisticated, these two factors alone are not dispositive of Jones's justification for keeping and producing inadequate records. This Court finds that Jones's businesses are not substantially different from the debtor's businesses in *Juzwiak*.

---

[2] *See Juzwiak*, 89 F.3d at 428 (holding that the debtor's inadequacy of records produced is unacceptable under 11 U.S.C. § 727 (a)(3) if it forces creditors, the trustee, and the court to speculate as to the debtor's financial condition).

8

Additionally, the sale of Jones's homestead presents a special circumstance, which demonstrates Jones's lack of justification in producing inadequate records. While the proceeds from this sale, which totaled $77,321.50, were exempt from creditors for six months for the sole purpose of investing in a new homestead,[3] Jones spent most of these proceeds on assets other than a replacement homestead. The Court finds that at least $57,021.00[4] was spent without any form of receipt or substantiation. This Court further finds that this is a *substantial* amount of money to spend without any documentation. The utter lack of documentation indicates that Jones has no justification for failing to keep and produce adequate records to the Trustee such that the Court, the creditors, and the Trustee may ascertain Jones's financial condition.

In addition, Jones's testimony at trial with regard to his expenses presents another special circumstance which further demonstrates his lack of justification for producing inadequate records to the Trustee. Jones disclosed that he spent a substantial portion of the cash proceeds from the sale of his homestead on a number of bills and outstanding debts. These bills include, among others, rent, utilities, car payments, veterinarian expenses, and hospital expenses. In addition, Jones's payments of his outstanding debts include payments for his trailer, jet ski, child support to the Attorney General's office, and attorney fees. Jones made most of these payments in cash to entities who keep their own records of such payments. As such, Jones could have easily produced some documentation from those entities, such as receipts or statements, proving when he made those payments and how much he paid to that entity. This, he did not do. Under these circumstances, the Court finds that Jones's failure to produce adequate records was not justified.

The only documents Jones produced at trial were: (1) cashier's check receipts for three checks, which Jones's fiancée at the time used as a down payment on real property in Fayette County; (2) the deed and warranty for that property; (3) and vague bank statements detailing only the date and amount of withdrawals and deposits Jones made on his account without explanations of where he spent the cash he withdrew. Because these records do not allow the Trustee or the creditors to fully ascertain Jones's financial condition, Jones has failed to meet his burden of establishing that his failure to produce sufficient receipts and records was justified

---

[3] *England*, 975 F.2d at 1175.
[4] Jones testified he spent $57,021.00 of the proceeds from the sale of his homestead prior to filing his Chapter 7 petition.

under all the circumstances. Accordingly, his discharge will be denied pursuant to 11 U.S.C. § 727(a)(3).

### III. CONCLUSION

"[A] discharge in bankruptcy is a privilege, not a right." *Juzwiak*, 89 F.3d at 427. For the court to grant a debtor a "fresh start," the debtor must be honest and comply with the Bankruptcy Code. *United States v. Cluck*, 87 F.3d 138, 140 (5th Cir. 1996) (citing *Grogan v. Garner*, 498 U.S. 279, 286 (1991)). Courts should deny the privilege of a discharge if the debtor fails to comply with the Code. *Cluck*, 87 F.3d at 140 (citing 11 U.S.C. § 727).

Jones has gone to great lengths to keep the disposition of his assets from both his creditors and the Chapter 7 Trustee. He has transferred money with intent to conceal the purchase of major assets. Accordingly, he has made himself ineligible for discharge. As a completely separate ground for denial of discharge, he has failed to keep and produce records sufficient for the Trustee to make informed decisions about Jones's financial condition. In order for the bankruptcy process to be fair to both Jones and his creditors, he must be honest and open in his dealings with the Court, the Trustee, and the creditors. In this, Jones has failed.

For the foregoing reasons, this Court sustains the Trustee's Objection to Jones's Discharge. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law[5] pursuant to FED. R. CIV. P. 52, as incorporated into adversary proceedings in bankruptcy cases by FED. R. BANKR. P. 7052. The Court will issue a separate order consistent with this Memorandum Opinion.

SIGNED this 13th day of July, 2005.

Jeff Bohm
United States Bankruptcy Judge

---

[5] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.